UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

DAVID N. WILSON,

          Plaintiff,                    Case No. 1:22-cv-897

v.                                     Honorable Paul L. Maloney

UNKNOWN REZA et al.,

          Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In an order (ECF No. 6) entered on August 29, 2022, the Court granted Plaintiff leave to proceed *in forma pauperis*.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Reza and Houck, as well as all "official capacity" claims. Plaintiff's First Amendment retaliation claim against Defendant Allen remains.

**Discussion**

I. **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Michigan Reformatory (RMI) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Correctional Officer Unknown Reza, Classification Director Unknown Houck, and Correctional Officer Unknown Allen, in their individual and official capacities.

Plaintiff alleges that, on July 7, 2022, Plaintiff submitted a letter to Defendant Houck, complaining that he had not been called out to work or paid for his job. (Compl., ECF No. 1, PageID.3.) Plaintiff appears to claim that Defendant Reza was at fault. (*Id.*) Defendant Houck took no action in response to Plaintiff's letter. (*Id.*)

On July 14, 2022, Plaintiff submitted a second letter to Defendant Houck complaining that he had not been paid. (*Id.*) Defendant Houck responded: "she removed me from my assignment and placed me on Double OO for refusing to work." (*Id.*) Plaintiff then wrote a third letter "informing defendant that [Plaintiff] will be writing a grievance and that she will have to justify her decision where plaintiff never refused to work." (*Id.*, PageID.3–4.) Plaintiff submitted complaints against Defendant Reza and Defendant Houck on July 18 and 19, 2022. (*Id.*, PageID.4.) Plaintiff alleges that Defendant Reza calls out one African American prisoner for work for every five Caucasian prisoners. (*Id.*) On July 22, 2022, "Defendant Houck placed Plaintiff back on his job assignment . . ." (*Id.*)

On July 23, 2022, Defendant Allen initiated a "false conflict" with Plaintiff. (*Id.*) Defendant Allen stated: "Oh you don't know the f****** rules! . . . We decide who we want out and if we don't want your black ass out you don't come out!" (*Id.*) Defendant Allen proceeded to write Plaintiff a Class I Misconduct. (*Id.*) Plaintiff was placed in segregation that day (a Saturday) and

2

Defendant Houck removed Plaintiff from Plaintiff's work assignment the following Monday, July 25, 2022. (*Id.*, PageID.5.) Plaintiff contends that, at the time that Defendant Houck removed Plaintiff from his work assignment, Plaintiff had not been found guilty of the Class I Misconduct. (*Id.*)

Plaintiff brings claims for violation of his right to equal protection under the law, as well as First Amendment retaliation. Plaintiff seeks a declaratory judgment, injunctive relief, and compensatory and punitive damages.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71

3

(6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.  **Equal Protection**

Plaintiff alleges that Defendant Reza discriminated against Plaintiff on the basis of race, violating Plaintiff's right to equal protection under the law. (ECF No. 1, PageID.6.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). "An equal protection claim under the Fourteenth Amendment requires a state actor's intentional discrimination because of the plaintiff's membership in a protected class," which includes race. *Umani v. Michigan Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011). To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Such discriminatory purpose must be a motivating factor in the actions of the defendants. *Id.* at 265-66. "A plaintiff presenting a race-based equal protection claim can either present direct evidence of discrimination,

or can establish a prima facie case of discrimination under the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Umani*, 432 F. App'x at 458.

Plaintiff alleges no facts constituting direct evidence of discriminatory motive or purpose in Defendant Reza's refusal to call Plaintiff out to work. *See id*. Direct evidence "does not require a fact-finder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Id.* (quoting *Johnson v. Kroger Co.,* 319 F.3d 858, 865 (6th Cir. 2003)). Generally, direct evidence is comprised of blatant discriminatory remarks. *Id*. Plaintiff's complaint contains no such allegations.

Plaintiff also fails to allege a prima facie claim under the indirect, burden-shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). To establish a prima facie case of discrimination under the *McDonnell Douglas* test, a plaintiff must show that (1) he was a member of a protected class; (2) he was qualified for the job; (3) he was subjected to an adverse employment decision; and (4) he was "replaced by a person outside the protected class or treated differently than similarly situated non-protected employees. *See Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008) (internal quotations omitted). To be a similarly situated member of another class, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.'" *Umani*, 432 F. App'x at 460 (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)); *see also Mitchell v. Toledo Hosp.*, 964 F.2d 577, 586 (6th Cir. 1992).

Plaintiff alleges that significantly more Caucasian prisoners were called out for work than African American prisoners. At best, this demonstrates only disproportionate impact which,

5

though not irrelevant, is insufficient to state an equal protection violation. *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Washington v. Davis*, 426 U.S. 229, 240 (1976) (holding that racially disproportionate impact is not enough; an equal protection claim requires evidence of a racially discriminatory purpose)). Plaintiff provides no facts concerning Defendant Reza's refusal to call Plaintiff out to work, and his complaint is devoid of facts that the Caucasian prisoners called out to work were similarly situated to Plaintiff in all material respects. Accordingly, the Court will dismiss Plaintiff's equal protection claim.

### B. Retaliation

Plaintiff also brings claims of First Amendment retaliation against Defendants Houck and Allen in their individual and official capacities.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

#### 1. Defendant Houck

In support of his retaliation claim against Defendant Houck, Plaintiff asserts that he submitted three letters to Defendant Houck complaining that Defendant Reza was not calling Plaintiff out to work. Defendant Houck took no action in response to the first or third letters. In response to Plaintiff's second letter, Defendant Houck submitted only a written response,

6

explaining Defendant Reza's reasoning for not calling Plaintiff out to work: "she removed me from my assignment and placed me on double 00 for refusing to work." (ECF No. 1, PageID.3.)[1] On July 22, 2022, after Plaintiff submitted complaints against Defendants Houck and Reza, Defendant Houck "placed Plaintiff back on his job assignment . . . ." (ECF No. 1, PageID.4.)[2] Plaintiff also claims that, following Plaintiff's placement in segregation for Class I Misconduct, Defendant Houck removed Plaintiff from his work assignment. (*Id.*, PageID.5.)

As to the first element of a retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). Thus, taking Plaintiff's allegations as true, the Court

---

[1] Though Plaintiff's use of pronouns and quotations is unclear, the Court can only logically conclude that Plaintiff intends to convey Defendant Houck's explanation as to why Defendant Reza had not called Plaintiff out to work. In examining the context of Plaintiff's quotation, the Court considers Defendant Houck's alleged role in investigating Plaintiff's complaints, the fact that Plaintiff was not being called out to work by Defendant Reza prior to Defendant Houck's response, and Plaintiff's claim that the July 18th letter was a direct response to Plaintiff's July 14, 2022, complaint.

[2] The full sentence from Plaintiff's complaint reads: "Defendant Houck placed Plaintiff back on his job assignment July 22, 2022, thus, plaintiff was not called out to work." (ECF No. 1, PageID.4.) Despite the Court's best efforts to liberally construe Plaintiff's complaint, the Court is unable to determine what Plaintiff intends to convey in stating ". . . thus, plaintiff was not called out to work."

7

concludes that Plaintiff's complaints against Defendants Houck and Reza constituted protected conduct.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell*, 308 F.3d at 606 (6th Cir. 2002). Plaintiff's allegations of adverse action against Defendant Houck are two-fold.

First, Plaintiff alleges that Defendant Houck retaliated against Plaintiff by failing to promptly correct what Plaintiff perceived to be discriminatory and retaliatory conduct. However, many courts, including this one, have held that the denial or refusal to process a grievance is not an adverse action. *See, e.g.*, *Cameron v. Gurnoe*, No. 2:19-cv-71, 2019 WL 2281333, at *4–5 (W.D. Mich. May 29, 2019) (citing cases); *Branch v. Houtz*, No. 1:16-cv-77, 2016 WL 737779, at *6 (W.D. Mich. Feb. 26, 2016); *Ross v. Westchester Cnty. Jail*, No. 10 Civ. 3937(DLC), 2012 WL 86467, at *8 (S.D.N.Y. Jan. 11, 2012) (discussing that the refusal to file a grievance is, without more, insufficient to constitute an adverse action); *Stone v. Curtin*, No. 1:11-cv-820, 2011 WL 3879505, at *4 (W.D. Mich. Aug. 31, 2011) (concluding that the failure to process a prison grievance would not deter a prisoner of ordinary firmness from exercising his right to file a grievance); *Green v. Caruso*, No. 1:10-cv-958, 2011 WL 1113392, at *10 (W.D. Mich. Mar. 24, 2011) (finding that the denial of a prisoner's grievances was not sufficiently adverse to support a retaliation claim); *Burgos v. Canino*, 641 F. Supp. 2d 443, 454 (E.D. Pa. 2009), *aff'd*, 358 F. App'x 302 (3d Cir. 2009) (discussing that the rejection or denial of prison grievances does not constitute

8

an adverse action for purposes of a retaliation claim). And § 1983 liability may not be imposed simply because a supervisor failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond). Thus, Plaintiff does not adequately allege adverse action with respect to his claim that Defendant Houck failed to act in response to Plaintiff's complaints. Because Plaintiff fails to satisfy the second element for a First Amendment retaliation claim as to Defendant Houck's failure to act, the Court need not analyze whether Plaintiff alleges sufficient facts to support the element of causation.

Second, Plaintiff alleges that Defendant Houck removed Plaintiff from Plaintiff's work assignment after Plaintiff was placed in segregation. While the Court finds that removal of a work assignment is a sufficiently adverse action, *see Hill*, 630 F.3d as 474–75, Plaintiff fails to satisfy the third element of the retaliation claim; Plaintiff does not plead facts which would plausibly suggest that Defendant Houck's actions were motivated by Plaintiff's protected conduct.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). However, "[a]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'"

*Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)).

Here too, Plaintiff provides the Court with nothing more than a conclusory allegation of retaliation. At the time that Defendant Houck removed Plaintiff from his work assignment on Monday, July 25, 2022, Plaintiff had been charged with a Class I Misconduct for threatening behavior and placed in segregation. Plaintiff's complaint contains no facts that would allow the Court to infer that Defendant Houck's actions were motivated by Plaintiff's earlier complaints as opposed to the circumstances surrounding Plaintiff's pending charges. This is particularly true where, shortly after Plaintiff made his complaints, Defendant Houck placed Plaintiff back on his work assignment. (ECF No. 1, PageID.4.) Accordingly, the Court will dismiss all claims of retaliation against Defendant Houck.

### 2. Defendant Allen

Plaintiff alleges that, in response to his complaints about not being called out to work, Defendant Allen manufactured a false conflict and charged Plaintiff with a Class I Misconduct for threatening behavior. As discussed above, Plaintiff has sufficiently alleged protected conduct, satisfying the first element of Plaintiff's retaliation claim.

As to the second element, the Sixth Circuit has held that "restricting a prisoner's housing by placing him in administrative segregation constitutes an adverse action." *Hill*, 630 F3d at 474. Further, the issuance of a misconduct charge can be considered an adverse action. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007) (discussing that the issuance of a misconduct ticket can "constitute[] an adverse action"); *see also Hill*, 630 F3d at 474 (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse"); *Scott v. Churchill*, 377 F.3d 565, 572 (6th Cir. 2004) ("[T]he mere potential threat of disciplinary sanctions is sufficiently adverse action to support a claim of retaliation."). Here, Plaintiff alleges that he was

sent to administrative segregation and received a class II misconduct ticket for insolence, (Compl., ECF No. 1, PageID.3), both of which constitute adverse action.

Finally, Plaintiff asserts that, in the context of manufacturing a false conflict to support a charge of threatening behavior, Defendant Allen explicitly stated: "Oh you don't know the f****** rules! . . . We decide who we want out and if we don't want your black a** out you don't come out!" (ECF No. 1, PageID.4.) Taking this allegation as true as required at this stage, the Court finds that Plaintiff also alleges sufficient facts to satisfy the element of causation. Therefore, Plaintiff's retaliation claim against Defendant Allen remains.

### C. Official Capacity Claims

Finally, Plaintiff brings claims against each Defendant in both their individual and official capacities. For the reasons set forth below, the Court will dismiss all "official capacity" claims.

Official-capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978)). An official-capacity suit is to be treated as a suit against the entity itself. *Id*. at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)); s*ee also Matthew v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). "Individuals sued in their official capacities stand in the shoes of the entity they represent," and the suit is not against the official personally. *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003); *Graham*, 473 U.S. at 165–66. Accordingly, claims against each Defendant employed by the MDOC, (ECF No. 1, PageID.2–3), are treated as claims against the MDOC itself.

Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438

U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).

Sovereign immunity extends not only to the State itself, but also to "state instrumentalities," which includes the MDOC. *McCoy v. Michigan*, 369 F. App'x 646, 653 (6th Cir. 2010) (citing *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Turnboe v. Stegall*, 234 F.3d 1270 (6th Cir. 2000)). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy*, 369 F. App'x at 653–54. Therefore, Plaintiff's "official capacity" claims seeking monetary relief are properly dismissed on grounds of immunity.

While a suit against an individual in his official capacity is ordinarily equivalent to a suit brought against the governmental entity, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989), an official-capacity action seeking *declaratory and injunctive relief* constitutes an exception to sovereign immunity, *see Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). As the Supreme Court has recognized, a suit under *Ex Parte Young* for prospective declaratory or injunctive relief is not treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Importantly, as the Supreme Court repeatedly has recognized, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Here, as discussed above, Plaintiff's complaint does not plausibly suggest *any* violation of federal law with respect to Plaintiff's not being called out to work, let alone one that is ongoing. The same is true with respect to Plaintiff's claim of retaliation against Defendant Allen. Plaintiff's complaint discussed events that occurred in July 2022, resulting in a charge of Class I Misconduct. Plaintiff's complaint does not allege ongoing retaliation, nor does it seek relief properly characterized as prospective. Accordingly, the Court will dismiss Plaintiff's "official capacity" claims in their entirety.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Houck and Reza and all Defendants in their "official capacities" will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's First Amendment retaliation claim against Defendant Allen, individually, remains in the case.

An order consistent with this opinion will be entered.


Dated:   October 27, 2022                                     /s/ Paul L. Maloney
                                                              Paul L. Maloney
                                                              United States District Judge